THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

David A. Joseph, Sr.,                    )       CASE NO. 3:12 CV 0847
                                         )
              Plaintiff,                 )
                                         )
      v.                                 )
                                         )       OPINION AND ORDER
Mercer County Commissioners, *et al.*,   )
                                         )
              Defendants.                )

*Pro Se* Plaintiff David A. Joseph, Sr. filed the above-captioned action under 42 U.S.C. § 1983

against the Mercer County Commissioners, the Mercer County Adult Detention Center

("MCADC"), Mercer County Sheriff Jeff Grey, MCADC Administrative Sergeant Mark Heinl,

MCADC Deputy Kyle Strohl, and MCADC Captain Jodi Lange.  In his Complaint, Plaintiff alleges

excessive force, deliberate indifference to his serious medical needs, denial of access to courts, and

retaliation.  Plaintiff seeks monetary relief.

## I.     Background

Plaintiff alleges he was booked into the MCADC as a pre-trial detainee on August 1, 2011.

On that date, he informed MCADC staff member Ms. Contraras of his history of heart problems,

psychiatric disorders, and peanut allergies. He also advised Ms. Contraras that he (1) required an

assistive knee sleeve in light of acute arthritis in his right knee and hip, (2) wore dentures, and (3)

1

needed a soft diet.  Plaintiff maintains his dentures were taken away from him during the booking process.  (Doc. 1 at 2).

Plaintiff asserts he made repeated attempts to obtain his dentures, a knee sleeve, and a soft diet by making "verbal and written grievances" to Defendants Heinl, Grey, and Lange.  He claims he met with Defendant Lange on August 26, 2011 to discuss his concerns. Defendant Lange reassured Plaintiff that he would get his dentures, the personal equipment to use and care for his dentures, and a soft diet.  She also allegedly advised Plaintiff that medical had ordered a knee sleeve for him.  (Doc. 1 at 2).

Plaintiff received his dentures on the evening of August 26, 2011, but alleges he was not given "the equipment to wear them or to care for them" until October 4, 2011. (Doc. 1 at 2). He maintains he did not receive a soft diet until September 17, 2011, over six weeks after he was booked into MCADC.  Plaintiff maintains he was in extreme pain from the combination of not receiving his dentures for three weeks, eating a hard diet for six weeks, and not receiving equipment to care for his dentures for over two months after his booking.  He asserts his gums were lacerated and, further, that "[b]y the time I finally got everything fixed with my dentures the scar tissue and swelling made it so they would no longer fit." (Doc. 1 at 2).   Plaintiff also asserts he was in extreme pain from his arthritis.

Plaintiff maintains he wrote a grievance to Defendant Grey regarding these issues.  He asserts Defendant Grey's only response was to advise Plaintiff to have his lawyer contact MCADC's lawyers.  Plaintiff states he informed Defendant Grey that he did not have a civil attorney, but Defendant Grey "still refused to acknowledge me or to address the issues further." (Doc. 1 at 2).

The Complaint also alleges MCADC corrections officers placed Plaintiff in a "restraint chair" for over three hours and threatened to break his thumb.  Plaintiff asserts he suffered medical

problems as a result and was prevented from filing an excessive force complaint regarding the

incident.  Specifically, he asserts:

> On August 27, 2011, I was placed in a restraint chair. During the restraint
> procedure corrections officer, Jon Wolf, tightened the wrist restraints to [sic]
> tight, cutting off circulation and causing abrasions and bruises. The left shoulder
> strap got wrapped around my neck and stayed that way for three hours till I was
> released by c/o Heather Anderson and Sgt. Darryl Huber. The left leg restraint
> was not correctly tightened and when I pulled my leg out, after the officers left
> the room, the officers returned and when they couldn't get my leg back in
> Deputy Wolford bent my right thumb back and threatened to "break it." After
> the officers again left I again pulled my leg out as they once again failed to
> properly secure the strap. When the Deputy bent my thumb back it caused soft
> tissue damage that has still not healed and impedes my daily activities as I don't
> have full range of motion and probably never will. The restraint chair
> manufacturer states not to leave inmates in the chair more than two hours but I
> was there for over three hours and after I was released I had problems with
> muscle weakness, charlie horses, and balance which still persist today. I
> repeatedly asked the staff to document in writing and in pictures my injuries, to
> get me post incident medical care, and to allow me to file an excessive force
> complaint. I wrote grievances to Mark Heinl, Jodi Lange, and Jeff Grey to let me
> file the complaint and received no response nor was I ever allowed to do so.
> Pictures were taken fourteen hours after I was let out of the chair but even
> though I asked for copies I was never allowed to get them. Post incident medical
> care and X-rays were taken four days later and I was billed for all of it.

(Doc. 1 at 2-3).

    In late September 2011, Plaintiff alleges he had a "verbal argument" with Defendant Heinl

and was placed on "lockback" for five days. (Doc. 1 at 3).  He asserts that, while on "lockback," he

spilled his food tray and was subsequently placed on a "reduced diet" for three days, which means

his meals consisted only of sandwiches.  Plaintiff asserts he was given peanut butter sandwiches five

times while on this reduced diet, despite the fact he had advised MCADC staff of his peanut

allergies.  (Doc. 1 at 3).

    Plaintiff also asserts he experienced chest pains while on "lockback" and had difficulty

obtaining assistance because MCADC staff had locked out the intercom in his cell. He states

Defendant Strohl eventually brought him nitroglycerin, but only after repeated delays.  He asserts

"[m]y intercom was never unlocked and no staff did a verbal or visual check" during the approximately three hours Plaintiff claims he was experiencing chest pains. (Doc. 1 at 3).

The Complaint also asserts Defendants failed to promptly provide Plaintiff with adequate legal materials.  Plaintiff claims he had *pro se* cases pending in other courts and needed timely access to current legal materials in order to pursue these cases. (Doc. 1 at 3).  He asserts it would take two to three weeks to obtain a copy of the Ohio Revised Code and that "[o]nce I did get the book and I would get into the middle of my research, the staff would come get it stating someone else needed it."  (Doc. 1 at 3). He maintains the MCADC had only outdated editions of the Ohio Revised Code and "had no other legal materials available per the minimum standards." (Doc. 1 at 3).  As a result, Plaintiff asserts he had to rely on "outdated law" and that "[t]his tended to irritate the judges as they felt [his] motions were frivolous." (Doc. 1 at 3).  Plaintiff states this caused him "distinct harm" because his *pro se* motions were denied and "judges have become biased towards me to the point I file a motion one day and it is denied the next." (Doc. 1 at 4).

Plaintiff maintains he requested access to a psychologist or neurologist, or both, to have his medication adjusted but Defendants denied his request, informing him that "the jail did not have people come in for that nor did they transport for it."  (Doc. 1 at 3).  He further claims MCADC overcharged him for medical services and prescriptions. (Doc. 1 at 4).  Finally, Plaintiff claims Defendants failed to respond to his many grievances and "took no effective action to stop harassment or fix the initial problems." (Doc. 1 at 4).  He asserts that, after he submitted grievances, "staff retaliated by continued harassment with the intention of inflicting emotional stress." (Doc. 1 at 4).

Plaintiff seeks $6,997,500 in damages to "cover the cost of medications, short and long term specialty medical services (ot/pt, Surgeries, specialists visits, and replacement of medical and dental

4

assistive devices), Lost Wages future and current, Pain and Suffering, Anxiety, Reimbursement of County medical costs, and legal costs of this action." (Doc. 1 at 4).

## II.     Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1]  *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless.  *Neitzke*, 490 U.S. at 327.

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555.  The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard.  *Id.*

---

[1]        An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking § 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997);  *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the plaintiff.  *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998).

### III.    Analysis

#### A.    Mercer County Commissioners and MCADC

The Complaint is somewhat unclear, but it appears Plaintiff intends to sue the Mercer County Commissioners in both their official and individual capacities.  For the reasons set forth below, I find Plaintiff has failed to state claims upon which relief may be granted against this Defendant, regardless of whether Plaintiff's claims are asserted as official or individual capacity claims.

A claim for damages against a state or municipal officer in his official capacity is the equivalent of an action against the public entity he represents.  *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).  Plaintiff's claims against the Mercer County Commissioners in their official capacities are, therefore, construed against Mercer County.

As a rule, local governments may not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by employees or agents under a *respondeat superior* theory of liability.  *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Instead, the governmental entity can be held liable only when the plaintiff's injury is incurred as the direct result of the execution of the government's policy or custom, whether made by its lawmakers or by those whose orders may be said to represent official policy. *Id.* A municipality can therefore be held liable when it unconstitutionally implements or executes a policy statement, ordinance, regulation, or decision officially adopted by its officers.  *Id.* at 690.  *See also DiPiero v. City of Macedonia*, 180 F.3d 770, 786 (6th Cir. 1999).

In the instant case, to hold Mercer County liable for the actions of county employees, Plaintiff must identify the offending policy, connect the policy to Mercer County itself, and show that the particular injury was incurred because of the execution of that policy.  *Graham v. County of*

*Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004).  The Complaint in the instant case contains no factual allegations pertaining to Mercer County or any of its policies.  There is simply no suggestion on the face of the Complaint of a custom or policy of Mercer County which may have led to the violation of Plaintiff's constitutional rights.  Accordingly, I find Plaintiff has failed to state claims upon which relief may be granted against the Mercer County Commissioners in their official capacities.

To the extent Plaintiff is bringing claims against the Commissioners in their individual capacities, he also fails to state claims upon which relief may be granted.  A plaintiff cannot establish the liability of any defendant absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976).  *See also Heyerman v. Cnty. of Calhoun*, 680 F.3d. 642, 647 (6th Cir. May 29, 2012) (noting that "[p]ersons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior"); *Murphy v. Grenier*, 2011 WL 180780 at ** 1 (6th Cir. Jan. 19, 2011) ("Personal involvement is necessary to establish section 1983 liability").  In other words, individual liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants." *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991).  A defendant must, therefore, play more than a passive role in the alleged violation or show mere tacit approval of the actions in question. *Rizzo,* 423 U.S. at 371.

At a minimum, Plaintiff in the instant case must show that the Mercer County Commissioners were personally involved in, encouraged, or condoned the actions of County employees. *Id. See also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995).  The Complaint does not contain allegations suggesting the Commissioners knew Plaintiff or in any way personally participated in the alleged constitutional violations at issue. Accordingly, I find Plaintiff has failed to state claims upon which relief may be granted against the Mercer County Commissioners in their

individual capacities.  Plaintiff's claims against the Mercer County Commissioners are therefore subject to summary dismissal pursuant to § 1915(e).

Plaintiff's claims against MCADC must also be dismissed.  In order to state a claim under section 1983, a plaintiff must show that the alleged violation was committed by a "person" acting under color of state law. *See Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001); *Simescu v. Emmet Cty. Dept. of Soc. Svcs.*, 942 F.2d 372, 374 (6th Cir. 1991).  The MCADC is not a "person" subject to suit under § 1983. *See Watson v. Gill,* 2002 WL 1396900 at ** 1 (6th Cir. June 26, 2002) (finding that county jail is not a legal entity susceptible to suit under §1983); *Barnes v. Cuyahoga County Jail*, 2010 WL 148136 (N.D. Ohio Jan. 12, 2010); *Coffey v. Miami County Jail*, 2007 WL 316262 at *2 (S.D. Ohio Jan. 29, 2007); *Green v. Reid*, 2011 WL 282454 at *2 (N.D. Ohio Jan. 26, 2011). Thus, I find Plaintiff's claims against Defendant MCADC are subject to dismissal under §1915(e).

### B.  Excessive Force

Plaintiff alleges Defendants' improper use of the restraint chair constituted an excessive use of force.  Specifically, he maintains that (1) Corrections Officer Wolf fastened the wrist restraints too tight; (2) the left shoulder strap was wrapped around his neck for three hours; (3) Deputy Wolford threatened to, and in fact did, bend Plaintiff's thumb back because Plaintiff had pulled his leg out of the chair straps; and (4) he was kept in the chair for over three hours. (Doc. 1 at 2-3). Plaintiff alleges he suffered injuries as a result of this incident, including abrasions, bruises, soft tissue damage to his thumb, muscle weakness, charley horses, and "problems with his balance." (Doc. 1 at 2-3).

Plaintiff does not identify any specific constitutional provision infringed by the alleged conduct described above, citing only 42 U.S.C. § 1983.  (Doc. 1-1 at 4).  As the Supreme Court has explained, however, "§ 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Graham v. Connor*, 490 U.S. 386, 393-94

(1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979)).  In addressing an excessive force claim brought under section 1983, the "analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham*, 490 U.S. at 394.

"If the plaintiff was a free person at the time of the incident and the use of force occurred in the course of an arrest or other seizure of the plaintiff, the plaintiff's claim arises under the Fourth Amendment and its reasonableness standard."  *Phelps v. McCoy*, 286 F.3d 295, 299 (6th Cir. 2002) (citing *Graham*, 490 U.S. at 395).  For a plaintiff who was a convicted prisoner at the time of the incident, the Eighth Amendment "sets the standard for an excessive force claim," requiring a court to determine whether the defendant's conduct caused the "unnecessary and wanton infliction of pain." *Id.  See also Graham*, 490 U.S. at 395, n. 10; *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). Where a plaintiff was a pretrial detainee at the time of the alleged excessive use of force, the claim is analyzed under "the more generally applicable due process clause of the Fourteenth Amendment." *Phelps*, 286 F.3d at 299.  As established by the Supreme Court, the test for excessive force under the Fourteenth Amendment is whether the alleged conduct "shock[s] the conscience and [is] so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). *See also Graham*, 490 U.S. at 395, n. 10 (noting that the Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment").

Because the Complaint alleges excessive use of force while Plaintiff was housed at the MCADC as a pretrial detainee, Plaintiff's rights stem from the Due Process Clause of the Fourteenth Amendment.  *See Graham*, 490 U.S. at 395, n. 10.  *See also Griffin*, 604 F.3d at 953. The Sixth Circuit has explained that "[t]he law is unsettled as to whether the analysis for a Fourteenth Amendment excessive-force claim and an Eighth Amendment excessive-force claim is the same." *Griffin*, 604 F.3d at 953.  *See also Leary v. Livingston County*, 528 F.3d 438, 443 (6th Cir. 2008) ("[T]here

9

is room for debate over whether the Due Process Clause grants pretrial detainees more protections than the Eighth Amendment does").

I need not resolve this issue, however, because Plaintiff has failed to allege that Defendants Grey, Heinl, Lange, or Strohl were either personally involved in or tacitly approved the restraint chair incident.[2] As set forth above, a plaintiff cannot establish that a defendant is individually liable absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *See Rizzo*, 423 U.S. at 371; *Heyerman*, 680 F.3d at 647 (6th Cir. May 29, 2012). In the instant case, the Complaint does not contain any facts which reasonably associate Defendants Grey, Heinl, Lange, or Strohl with the restraint chair incident. There is simply no indication that any of these Defendants were involved in or present during this incident.

It is possible Plaintiff is alleging Defendants Grey, Heinl, and Lange are liable based on their supervisory roles as Sheriff, Administrative Sergeant, and Jail Captain, respectively. The theory of *respondeat superior*, however, does not apply to impute liability onto supervisory personnel. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). To establish liability of a supervisor, a plaintiff must show, at a minimum, "that the official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* Such liability must be based on "active unconstitutional behavior" and cannot be based on the mere right to control employees. *Id.* A plaintiff must demonstrate that a supervisory defendant "did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999). Supervisory liability cannot be based upon the failure to act, or simply because a supervisor denied a grievance or failed to act based upon information

---

[2]     The Complaint states that Defendants Grey, Heinl, and Lange are being sued "in their unofficial capacity," which I take to mean their individual capacities.

10

contained in a grievance.  *See Shehee*, 199 F.3d at 300; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

In the instant case, Plaintiff has failed to set forth any allegations that Defendants Grey, Heinl, or Lange engaged in any active unconstitutional behavior or implicitly authorized, approved or knowingly acquiesced in the alleged restraint chair incident.  While Plaintiff maintains these Defendants failed to respond to his grievances regarding this incident, it is well-established that a plaintiff cannot maintain a claim based solely on the denial of a grievance or the failure to act.  *See Shehee,* 199 F.3d at 300; *Summers*, 368 F.3d at 888.

Accordingly, I find Plaintiff has failed to state claims upon which relief may be granted against Defendants Grey, Heinl, Lange, or Strohl for excessive use of force.  Given the seriousness of the allegations, however, I will dismiss this claim without prejudice to permit Plaintiff to refile this claim against individuals who may have been directly involved in this alleged incident, should he so choose.

### C.    Deliberate Indifference to Serious Medical Needs

Plaintiff alleges Defendants were deliberately indifferent to his serious medical needs in a variety of respects. First, he asserts Defendants violated his constitutional rights by failing to (1) promptly provide him with his dentures, denture care equipment, and a soft diet; (2) order a knee sleeve for his arthritis; and (3) arrange for him to see a psychologist and neurologist to have his medication adjusted.  He also claims Defendants were deliberately indifferent when they placed his cell intercom on lockdown, resulting in delay in treatment for his chest pains.  Finally, he asserts Defendant served him peanut butter sandwiches despite being aware of his peanut allergies.

The Eighth Amendment prohibits prison officials from "unnecessarily and wantonly inflicting pain" on prisoners by acting with "deliberate indifference" to prisoners' serious medical needs. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  The Eighth Amendment, however, does not apply to pretrial detainees, such as Plaintiff herein. *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001).  The Fourteenth Amendment, rather, "affords pretrial detainees a due process right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004).  *See also Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009).  Thus, although the Eighth Amendment is not directly applicable to Plaintiff, its deliberate indifference standard is to be applied under the Fourteenth Amendment. *Graham,* 358 F.3d at 383.

A claim of deliberate indifference has both an objective and subjective component. *Harrison v. Ash*, 539 F.3d 510, 517-18 (6th Cir. 2008).  To satisfy the objective component, the injury must be sufficiently serious. *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (stating that Eighth Amendment is implicated by the "unnecessary and wanton infliction of pain" and not "inadvertent failure to provide adequate medical care"); *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005) (requiring that the prisoner demonstrate more than "mere discomfort or inconvenience").  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore,* 390 F.3d at 897.  *See also Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008).

The subjective component requires a showing that prison officials knew of, and acted with deliberate indifference to, an inmate's health or safety. *Wilson*, 501 U.S. at 302-03.  Deliberate indifference "entails something more than mere negligence." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  An inmate must show that prison officials had "a sufficiently culpable state of mind" in denying medical care. *Id.* at 834.  This standard is met if "the official knows of and disregards an

12

excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010) (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)).

### 1. Dental Care

Plaintiff first asserts Defendants were deliberately indifferent to his serious dental needs by failing to promptly return his dentures and provide denture care equipment and a soft diet. Specifically, Plaintiff maintains his dentures were taken from him when he was booked into the MCADC on August 1, 2011, and not returned to him until over three weeks later, on August 26, 2011. He asserts he did not receive a soft diet until September 17, 2011, and was not given the equipment to care for his dentures until October 4, 2011. Plaintiff maintains he was in extreme pain from the combination of not receiving his dentures for three weeks, eating a hard diet for six weeks, and not receiving equipment to care for his dentures for over two months after his booking. He asserts his gums were lacerated and, further, that "[b]y the time I finally got everything fixed with my dentures the scar tissue and swelling made it so they would no longer fit." (Doc. 1 at 2).

The Sixth Circuit has held that "[d]ental needs fall into the category 'of serious medical needs' because '[d]ental care is one of the most important needs of inmates.'" *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010) (quoting *McCarthy v. Place*, 2008 WL 5069039 at **4 (6th Cir. Dec. 2, 2008)). Not all dental problems, however, constitute serious medical needs. *McCarthy*, 2008 WL 5069039 at ** 4. Rather, "'[a] cognizable claim regarding inadequate dental care, like one involving medical care, can be based on various factors, such as the pain suffered by the plaintiff, the deterioration of the teeth due a lack of treatment, or the inability to engage in normal activities.'" *Id.* (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2nd Cir. 1998)). *See also Flanory*, 604 F.3d at 253.

13

Even assuming Plaintiff has set forth allegations satisfying the objective component of the above test, there is no indication in the Complaint that Defendants Grey, Heinl, or Strohl engaged in any active unconstitutional behavior or implicitly authorized, approved, or knowingly acquiesced in denying Plaintiff access to dentures, denture care equipment, or a soft diet. There are no allegations that any of these Defendants were responsible for the decision to confiscate Plaintiff's dentures in the first instance, nor is there any suggestion that they were involved in the alleged failure to promptly return them or provide denture care equipment and a soft diet. While Plaintiff maintains Defendants Grey and Heinl failed to respond to his grievances regarding this incident, he cannot maintain a claim based solely on the denial of a grievance or the failure to act. *See Shehee*, 199 F.3d at 300; *Summers*, 368 F.3d at 888. Accordingly, Plaintiff's claims that Defendants Grey, Heinl, and Strohl were deliberately indifferent to his serious dental needs fail to state claims upon which relief may be granted.

With respect to Defendant Lange, Plaintiff claims he had a "face to face" meeting with her on August 26, 2011, during which she reassured Plaintiff that he would get his dentures, the personal equipment to use and care for them, and a soft diet. He acknowledges his dentures were returned that night, but states he did not receive the "equipment to wear them or to care for them" until months later. He also asserts he did not receive a soft diet until "I eventually wrote a grievance to Jodi Lange directly who ordered the diet." (Doc. 1 at 2). Even after this diet was ordered, Plaintiff complains he "was still given raw carrots, fritos, and fruit loops however they wouldn't give me pizza, salad, or ham." (Doc. 1 at 2).

I find Plaintiff has failed to sufficiently allege that Defendant Lange was deliberately indifferent to his serious dental needs. Plaintiff does not allege Defendant Lange was personally involved in or tacitly authorized the decision to confiscate Plaintiff's dentures during booking, nor does he allege she was personally responsible for the delay in getting them back. To the contrary,

14

Plaintiff acknowledges his dentures were returned shortly after he met with Defendant Lange on August 26, 2011.  While Plaintiff maintains he did not receive his denture care equipment and soft diet until much later, the Complaint does not set forth sufficient allegations suggesting Defendant Lange acted with deliberate indifference.  As set forth *supra*, deliberate indifference is characterized by obduracy or wantonness, and "cannot be predicated on negligence, inadvertence, or good faith error." *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012). *See also Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Flanory*, 604 F.3d at 253 (a prison official is deliberately indifferent only if he or she "knows of and disregards an excessive risk to inmate health and safety").  There is no indication that Defendant Lange wantonly disregarded an excessive risk to Plaintiff's health.  At best, the Complaint may allege negligence or good faith error on the part of Defendant Lange in failing to ensure that Plaintiff received his denture care equipment and soft diet on a timely basis. This is insufficient, however, to establish deliberate indifference under the Eighth Amendment. Accordingly, the Court finds Plaintiff's claim that Defendant Lange was deliberately indifferent to his serious medical needs fails to state a claim upon which relief may be granted.

For the reasons set forth above, Plaintiff's claim that Defendants were deliberately indifferent to his serious dental needs is subject to summary dismissal under § 1915(e).  I am concerned, however, about the lengthy delay Plaintiff allegedly experienced in receiving his dentures, denture care equipment, and soft diet, as well as the pain and injuries he claims to have suffered as a result.  Accordingly, I will dismiss this claim without prejudice so as not to foreclose Plaintiff from refiling this claim against individuals who may have been directly involved in this alleged constitutional violation, should he so choose.

### 2.    Knee Sleeve

Plaintiff next argues Defendants were deliberately indifferent to his serious medical needs because they failed to provide him with an assistive knee sleeve.  He asserts he informed MCADC

15

staff that he suffered from acute arthritis of his right knee and hip, and required an assistive knee sleeve to address this condition. He maintains he was in extreme pain from arthritis and his repeated requests for a knee sleeve were ignored. Plaintiff claims he met with Defendant Lange on August 26, 2011, to discuss his concerns and she informed him that "medical had ordered the knee sleeve." (Doc. 1 at 2).  The Complaint does not include any other allegations regarding this issue. It is, thus, unclear whether or when Plaintiff ever received the requested knee sleeve.

Even if Plaintiff set forth sufficient allegations to satisfy the objective component of the Eighth Amendment test, I find he has failed to establish that Defendants Grey, Heinl, Strohl, or Lange were deliberately indifferent to his serious medical needs.  As an initial matter, there is no indication in the Complaint that Defendants Grey, Heinl, or Strohl had any personal involvement with respect to this issue. There are no allegations that any of these Defendants had any role in the process of requesting the knee sleeve or were responsible for the alleged delay in obtaining it. Moreover, there is no suggestion that any of these Defendants implicitly authorized, approved, or knowingly acquiesced in the alleged failure to timely provide Plaintiff with a knee sleeve. While Plaintiff maintains Defendants Grey and Heinl failed to respond to his grievances regarding this incident, he cannot maintain a claim based solely on the denial of a grievance or the failure to act. *See Shehee,* 199 F.3d at 300; *Summers*, 368 F.3d at 888.

Plaintiff does allege he met with Defendant Lange to discuss this issue. The Complaint does not contain allegations suggesting this Defendant was deliberately indifferent to his medical needs, however. According to Plaintiff, Defendant Lange met with Plaintiff, listened to his concerns, and informed him the medical department had ordered a knee sleeve.  (Doc. 1 at 2).  Plaintiff does not allege Defendant Lange wantonly or consciously delayed his access to the knee sleeve, nor does he claim he failed to receive the knee sleeve after his meeting with Defendant Lange.  In the absence

of any such allegations, I find Plaintiff has failed to sufficiently allege Defendant Lange was deliberately indifferent to his serious medical needs with respect to this issue.

Accordingly, Plaintiff's claim that Defendants Grey, Heinl, Strohl, and Lange were deliberately indifferent to his serious medical need for a knee sleeve is therefore summarily dismissed under § 1915(e).

### 3.    Denial of Access to a Psychologist

Plaintiff next claims Defendants denied him timely access to a psychologist or neurologist. The only allegations regarding this issue are as follows:

> While I was in the Adult Detention Center, I requested to see a psychologist and Neurologist to have my medication adjusted or changed, both of which were denied and I was told that the jail did not have people come in for that nor did they transport for it. I would have to wait to get to prison.

(Doc. 1 at 3).  The Complaint does not contain any further information or allegations regarding this claim.

Accordingly, I find this claim is subject to summary dismissal under section 1915(e). As an initial matter, there is no indication in the Complaint that Defendants Grey, Heinl, Lange, or Strohl had any personal involvement with respect to the alleged denial of psychological care. There are no allegations that any of these Defendants were aware that Plaintiff requested a visit with a psychologist and/or neurologist, or that they played any role in the alleged denial of this request. Moreover, there is no suggestion that any of these Defendants implicitly authorized, approved, or knowingly acquiesced in the alleged failure to timely provide Plaintiff with psychological care.

Even assuming Plaintiff had sufficiently alleged some nexus between Defendants and this particular issue, I find Plaintiff has failed to set forth sufficient allegations to satisfy either the objective or subjective components of the Eighth Amendment deliberate indifference test.  While Plaintiff states vaguely that he wanted to have his "medication adjusted or changed," he does not allege any facts indicating the nature of his psychological condition, the specific medication or

17

medications at issue, or the circumstances prompting him to request an adjustment to his medication. Moreover, the Complaint fails to allege Plaintiff suffered any injury or medical consequences as a result of the Defendants' alleged failure to refer Plaintiff to a psychologist or neurologist, or both. In the absence of any such allegations, I find Plaintiff has failed to allege either that his psychological condition was "sufficiently serious" or that Defendants knew of, and acted with, deliberate indifference to his health or safety.

Accordingly, I find Plaintiff's claim that Defendants Grey, Heinl, Strohl, and Lange were deliberately indifferent to his alleged need for psychological care fails to state a claim upon which relief may be granted and therefore must be summarily dismissed under section 1915(e).

### 4. Treatment for Chest Pains

Plaintiff next claims Defendants failed to provide adequate and timely care when he experienced chest pains while on lockdown. Specifically, the Complaint alleges:

> While on lockdown, I began having chest pains @ approx 5:15 p.m. The corrections staff had my intercom in my cell locked out so after several unsuccessful attempts to get a hold of staff I had another inmate call them and tell them I needed a nitro. Twenty minutes later [Defendant] Kyle Strohl brought me a nitro. After approx. 15 mins I again tried to contact central to get a second nitro but my intercom was still locked out. I finally told Kyle Strohl when he did mail at approx 7 p.m. Kyle Strohl finished doing mail and then brought me the nitro. I tried to get a third nitro at approx 8 p.m. but my intercom was still locked out and all inmates were gone to church. I didn't see or hear from Mr. Strohl till he brought inmates back from church around 8:30 p.m. My intercom was never unlocked and no staff did a verbal or visual check during this time. I wrote a grievance to Mark Heinl, Jodi Lange, and Jeff Grey and never received a response.

(Doc. 1 at 3).

Even if Plaintiff has set forth sufficient allegations to satisfy the objective component of the Eighth Amendment test, I find he has failed to establish that Defendants Grey, Heinl, Strohl, or Lange were deliberately indifferent to his serious medical needs. As an initial matter, there is no indication in the Complaint that Defendants Grey, Heinl, or Lange had any personal involvement

18

with respect to this incident. There are no allegations that any of these Defendants had any role in the decision to lock out the intercom in Plaintiff's cell while he was on lockdown. Further, the Complaint does not allege these Defendants were aware Plaintiff was experiencing chest pains or that he was having difficulty obtaining medical assistance for his symptoms. Moreover, there is no suggestion that any of these Defendants implicitly authorized, approved, or knowingly acquiesced in the alleged failure to timely provide Plaintiff with medical care for this issue. While Plaintiff maintains Defendants Grey, Heinl, and Lange failed to respond to his grievances regarding this incident, he cannot maintain a claim based solely on the denial of a grievance or the failure to act. *See Shehee,* 199 F.3d at 300; *Summers*, 368 F.3d at 888.

The Complaint does allege Defendant Strohl was aware of Plaintiff's chest pains and failed to either unlock Plaintiff's intercom or conduct a visual or verbal check on him during the approximately three hour time period in which he was experiencing distress. I find, however, that the allegations in the Complaint are insufficient to suggest Defendant Strohl consciously disregarded an excessive risk to Plaintiff's health and safety. Plaintiff does not allege Defendant Strohl locked out the intercom in Plaintiff's cell or was otherwise personally involved in the decision to do so. Plaintiff also does not allege this Defendant was authorized to unlock Plaintiff's intercom. In fact, the Complaint makes no allegations regarding Defendant Strohl's position or role at the prison. The only direct allegations against Defendant Strohl is that he brought Plaintiff nitroglycerin on three occasions during the three hour time period he was experiencing chest pain. It is unclear from the Complaint whether Defendant Strohl is even a member of the MCADC medical staff, given Plaintiff's claim that Defendant Strohl brought Plaintiff the nitro after he (Strohl) delivered the mail and brought the other inmates back from church. (Doc. 1 at 3).

The Court finds these allegations are insufficient to demonstrate Defendant Strohl was aware of, and wantonly disregarded, a substantial risk of serious harm. At best, the Complaint may

19

suggest negligence or good faith error on the part of Defendant Strohl for failing to check on

Plaintiff more frequently.   As described above, however, this is insufficient to establish deliberate

indifference under the Eighth Amendment. *See Reilly*,  680 F.3d at 624 (6th Cir. 2012) (noting that

deliberate indifference is characterized by obduracy or wantonness and "cannot be predicated on

negligence, inadvertence, or good faith error"). Accordingly, I find Plaintiff has failed to state a

claim upon which relief may be granted with respect to his claim that Defendants Grey, Heinl,

Lange, and Strohl were deliberately indifferent to his serious medical needs for failing to adequately

address his chest pains.  This claim is, therefore, dismissed under section 1915(e).

### 5.      Peanut Allergy

Plaintiff also asserts, summarily, that he was served peanut butter sandwiches on five

occasions while he was on lockdown, despite the fact he had expressly advised MCADC that he

had peanut allergies. Plaintiff does not allege he suffered any allergic reaction or other injury as a

result.

I find this claim is subject to summary dismissal under section 1915(e).  There is no

indication in the Complaint that Defendants Grey, Heinl, Lange, or Strohl had any personal

involvement with respect to these incidents. There are no allegations that these Defendants played

any role in selecting Plaintiff's meals while he was on lockdown, nor is there any suggestion that

these Defendants implicitly authorized, approved, or knowingly acquiesced in the decision to serve

Plaintiff peanut butter.

Even assuming Plaintiff had sufficiently alleged some nexus between Defendants and these

alleged incidents, I find Plaintiff has failed to set forth sufficient allegations to satisfy either the

objective or subjective components of the Eighth Amendment deliberate indifference test.  Plaintiff

does not allege he suffered any injury or medical consequence as a result of being served peanut

butter. Moreover, he does not allege, and there is no indication, that any of the named Defendants

consciously disregarded Plaintiff's health and safety by intentionally serving him sandwiches to which he was allergic. In the absence of any such allegations, I find Plaintiff has failed to allege either a "sufficiently serious" injury or that Defendants acted with deliberate indifference to his health or safety. This claim must, therefore, be summarily dismissed under § 1915(e).

### D. Access to Courts

Plaintiff next argues he was denied access to the courts because Defendants failed to promptly provide adequate legal materials. He maintains that, while detained at the MCADC, he "attempted to continue working on [his] legal work that [he] had pending in other courts in a Pro-Se capacity" but experienced two to three week delays in obtaining "legal materials such as the Ohio Revised Code." (Doc. 1 at 3). He asserts that, even when he did receive a copy of the Revised Code, "the staff would come get it stating that someone else needed it" and it would take several weeks to get it back. Plaintiff further claims he was only provided with outdated copies of the 2005, 2007 and 2009 editions of the Ohio Revised Code. He asserts "[t]hey had no other legal materials available per the minimum standards." (Doc. 1 at 3). As a result, he maintains his motions were based on outdated law and this "tended to irritate judges as they felt the motions were frivolous . . . and would therefore deny all motions without benefit of a second glance." (Doc.1 at 3). He claims this has caused him "distinct harm" because "the judges" are now biased against him. Finally, he claims he "attempted to file for judicial release during the small window of opportunity between the *Peoples* decision and House Bill 86 but due to lack of materials and the time it took I was late and now am unable to file till 2014." (Doc. 1 at 3).

It is well-established that prisoners and pre-trial detainees have a constitutional right to access to the courts. *See Lewis v. Casey*, 518 U.S. 343 (1996); *Hadix v. Johnson*, 182 F.3d 400 (6th Cir. 1999); *Leveye v. Metropolitan Pub. Def. Office*, 2003 WL 21801466 (6th Cir. Aug. 4, 2003). To state a viable claim, however, an inmate must demonstrate he suffered "actual injury" as a result of

particular actions of prison officials. *Lewis*, 518 U.S. at 351. The Supreme Court has made clear that an inmate "cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.* Rather, an inmate "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.*

Moreover, this injury requirement is not satisfied by "just any type of frustrated legal claim." *Lewis,* 518 U.S. at 351. A prison official may be held liable only to the extent that his or her actions prevented a prisoner from pursuing, or caused the rejection of, specific non-frivolous direct appeals, habeas corpus applications, or civil rights actions. *Id. See also Hadix*, 182 F.3d at 405; *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999). "Impairment of any other litigating capacity is simply one of the incidental, and perfectly constitutional, consequences of conviction and incarceration." *Lewis*, 518 U.S. at 355.[3]

In addition, the Supreme Court has emphasized that an inmate's right of access to the courts "is ancillary to the underlying claim, without which [an inmate] cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In other words, an inmate must demonstrate "actual injury" by showing that his underlying claim is non-frivolous and that it was frustrated or impeded by the defendants. *Lewis*, 518 U.S. at 353. *See also Clark v. Johnston*, 2011 WL 219931 at * * 9 (6th Cir. Jan. 25, 2011) (stating that prisoner must demonstrate that the underlying claim allegedly prejudiced is not frivolous). It follows, then, "that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher,* 536 U.S. at

---

[3]     The Supreme Court stressed that the Constitution does not guarantee prisoners the ability to transform themselves into "litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis*, 518 U.S. at 355.

415. *See also Pilgram v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (finding that plaintiff must "plead and prove prejudice stemming from the asserted violation").

Plaintiff has failed to sufficiently allege that he suffered an "actual injury." He maintains he was denied access to the courts because (1) he experienced a two to three week delay in receiving legal materials, and (2) the MCADC contained only outdated editions of the Ohio Revised Code and "had no other legal materials available per the minimum standards." (Doc. 1 at 3). In and of themselves, these allegations are insufficient to state a claim. As set forth above, Plaintiff cannot establish an actual injury simply by stating, in vague and conclusory terms, that the prison law library or legal assistance program is inadequate. *Lewis*, 518 U.S. at 351. Plaintiff must go further and demonstrate that the alleged shortcomings in MCADC's law library hindered his efforts to pursue a specific, non-frivolous direct appeal, habeas corpus application, or civil rights action. *See Lewis*, 518 U.S. at 351; *Hadix*, 182 F.3d at 405; *Thaddeus-X*, 175 F.3d at 391.

Plaintiff fails to do so. He maintains generally that the alleged deficiencies in MCADC's law library hindered "legal work that I had pending in other courts in a Pro-Se capacity." (Doc. 1 at 3). He further states the lack of legal materials and outdated editions of the Ohio Revised Code  at MCADC "tended to make motions I wrote to be based on outdated law," which he claims "irritat[ed] judges" and caused them to deny his unidentified motions as frivolous. (Doc. 1 at 3). Plaintiff does not provide any further information about these unidentified *pro se* cases or motions. He gives no indication of the nature of the underlying case in any of these unidentified proceedings. As set forth above, the right of access to courts extends only to direct appeals, habeas corpus applications, and civil rights actions. *Id.* Plaintiff fails to provide sufficient allegations suggesting that any of his *pro se* cases or motions fall into one of these three categories. Moreover, he fails to allege any facts to suggest his underlying claims in any of these unidentified actions were non-frivolous. He provides no information regarding the content of the claims or the grounds for relief

23

asserted in his various cases and motions.  Without this information, Plaintiff fails to state a critical element of this cause of action.  *See Hadix*, 182 F.3d at 405.

Plaintiff also alleges that he "attempted to file for judicial release during the small window of opportunity between the *Peoples* decision and House Bill 86 but due to the lack of materials and the time it took I was late and now am unable to file till 2014."  (Doc. 1 at 4).  As an initial matter, it is unclear whether a motion for judicial release would constitute a direct appeal, habeas corpus application, or civil rights action and, thus, fall within the protection of the constitutional right to access to the courts.  Even assuming it did, Plaintiff fails to allege any facts to suggest his underlying claim for judicial release would have been non-frivolous.  Plaintiff does not identify the "*Peoples* decision," nor does he specify the aspect of House Bill 86 that he feels is relevant to his situation.[4] He does not provide any allegations to suggest the basis for a claim for judicial release under either of these authorities.  Without such information, I cannot assess whether Plaintiff's underlying claim would have been non-frivolous.  As the Supreme Court has explained, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint." *Christopher,* 536 U.S. at 415.  As Plaintiff has failed to set forth any allegations describing his underlying claim for judicial release, I find Plaintiff has failed to demonstrate "actual injury" sufficient to state a claim for denial of access to the courts.[5]

---

[4]     The only "*Peoples* decision" this Court is aware of is the Supreme Court of Ohio's decision in *State v. Peoples*, 102 Ohio St.3d 460 (Ohio 2004).  In that case, the Ohio Supreme Court held that Ohio Rev. Code 2929.20(B)(3) as in effect until March 23, 2000, violates the Equal Protection Clause. *Id.* at Syllabus.  The version of § 2929.20(B)(3) at issue in *Peoples* allowed eligible offenders sentenced to a prison term of five years or more but fewer than ten years to apply for judicial release after serving five years.  The Court determined this statute was unconstitutional because it denied judicial release to offenders sentenced to five years while allowing it for offenders sentenced to longer prison terms. *Id.* at 463.  Plaintiff herein does not explain how this case or House Bill 86 is relevant to him or would have supported a motion for judicial release.

[5]     Plaintiff's access to courts claim fails for the additional reason that it appears Plaintiff had court-appointed defense counsel for his underlying criminal charges at all times during his detainment at MCADC.  *See* Docket for State v. David Joseph, Mercer County Court of

Moreover, even if I were to assume that Plaintiff had sufficiently alleged "actual injury," Plaintiff fails to set forth any allegations suggesting Defendants Grey, Heinl, Strohl, or Lange were personally involved in or tacitly approved either the alleged delay Plaintiff experienced in obtaining legal materials or the allegedly outdated and inadequate nature of MCADC's law library.  As set forth above, a plaintiff cannot establish that a defendant is individually liable absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *See Rizzo*, 423 U.S. at 371; *Heyerman*, 680 F.3d at 647 (6th Cir. 2012).  In the instant case, the Complaint does not contain any facts which reasonably associate Defendants Grey, Heinl, Lange, or Strohl with Plaintiff's allegations that he was denied access to the courts.

Nor can Plaintiff hold Defendants Grey, Heinl, or Lange liable on the basis of their supervisory roles as Sheriff, Administrative Sergeant, and Jail Captain, respectively.  As explained above, to establish liability of a supervisor, a plaintiff must show, at a minimum, "that the official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending officers."  *Shehee,* 199 F.3d at 300.  Plaintiff has failed to set forth any allegations that Defendants Grey, Heinl, or Lange engaged in any active unconstitutional behavior or implicitly authorized, approved or knowingly acquiesced in the alleged denial of Plaintiff's access to the courts.

Accordingly, and for all the reasons set forth above, I find Plaintiff has failed to state a claim upon which relief can be granted for denial of access to the courts. This claim is, therefore, summarily dismissed pursuant to § 1915(e).

---

Common Please Case No. 10-CRM-039.  The Sixth Circuit has held that, where a pre-trial detainee is represented by appointed counsel in his underlying criminal case, his or her right to access to courts is fully protected, including with respect to a civil rights action under § 1983. *See Martucci v. Johnson*, 944 F.2d 291, 295 (6th Cir. 1991); *Holt v. Pitts*, 702 F.2d 639, 640 (6th Cir. 1983); *Leveye v. Metropolitan Public Defender's Office*, 2003 WL 21801466 at **2 (6th Cir. Aug. 4, 2003); *Thigpen v. Reid*, 2010 WL 5127649 at *3 (N.D. Ohio Dec. 9, 2010).

### E.    Retaliation

Plaintiff argues, summarily, that "[a]fter grievances were written, staff retaliated by continued harassment with the intention of inflicting emotional stress." (Doc. 1 at 4). He does not provide any further information or clarification regarding this claim.

A prisoner's claim that prison officials retaliated against him for engaging in protected conduct is grounded in the First Amendment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999).  In this context, a retaliation claim has three elements: (1) the prisoner was engaged in protected conduct; (2) an adverse action was taken against the prisoner that would deter a prisoner of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection exists between the first two elements – i.e. the prisoner's protected conduct motivated, at least in part, the adverse action.  *Id.* at 394.  *See also Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010).

Plaintiff has failed to set forth sufficient allegations to state a retaliation claim against these Defendants.  Even assuming Plaintiff engaged in "protected conduct" (i.e. filing grievances),[6] Plaintiff fails to provide any factual allegations suggesting these Defendants took "adverse action" against him or that any such adverse action was motivated by Plaintiff's protected conduct. Although pleadings filed by a *pro se* litigant are held to less stringent standards than formal pleadings drafted by lawyers, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  As the Supreme Court further explained in

---

[6]    The Sixth Circuit has held that, for purposes of a retaliation claim, "protected conduct" includes a prisoner's "undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).  If the grievances are frivolous, however, this right is not protected.  *Id.*

*Iqbal*, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).  It is not sufficient to plead "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*  Indeed, while legal conclusions can provide the framework of a complaint, "they must be supported by factual allegations."  *Id.*

Pursuant to *Iqbal*, I find the Complaint in the instant case fails to contain sufficient factual matter "to state a claim for relief that is plausible on its face" for retaliation.  While Plaintiff alleges generally that "staff retaliated by continued harassment with the intention of inflicting emotional stress," he does not plead any facts to support his allegations against these Defendants. Even under the less stringent pleading standards afforded *pro se* litigants, the Complaint herein is wholly insufficient.

Accordingly, I find Plaintiff's retaliation claim must be summarily dismissed pursuant to § 1915(e).

###    F.    Failure to Respond to Grievances

Plaintiff asserts he submitted "multiple grievances" to Defendants Grey, Heinl, and Lange during his four month stay at MCADC.  (Doc. 1 at 5). He maintains these Defendants repeatedly failed to respond to his grievances or "take effective action" to remedy the problems he identified. (Doc. 1 at 4).

As explained above, where a prison official's role is limited to the denial of administrative grievances or the failure to act with respect to such grievances, such prison officials are not liable under § 1983 on the theory that their actions constituted an acquiescence of the underlying alleged unconstitutional conduct. *See Shehee*, 199 F.3d at 300.  Specifically, the Sixth Circuit has held that a "combination of knowledge of a prisoner's grievance and failure to respond or remedy the complaint is insufficient to impose liability upon supervisory personnel under § 1983." *Miller v.*

27

*Bock*, 2003 WL 202173 at * 2 (6th Cir. Jan. 28, 2003) (citing *Poe v. Hayden*, 853 F.2d 418, 429 (6th Cir. 1988)). Accordingly, Plaintiff's allegations that Defendants Grey, Heinl, and Lange are liable solely by virtue of their alleged failure to respond to his grievances fail to state claims upon which relief can be granted and must be summarily dismissed under § 1915(e).

### G.  Overcharges for Medication

Plaintiff asserts MCADC overcharged him for medications "as they charge five times for one med." (Doc. 1 at 4). Without further explanation, he then lists the dollar amounts he was charged for doctor visits, prescriptions, and medications.

Again, as set forth above, a Complaint must contain either direct or inferential allegations respecting all the material elements of some viable legal theory to satisfy federal notice pleading requirements. *See Schied v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988). District courts are not required to conjure up questions not squarely presented to them or to construct full blown claims from sentence fragments. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985); *Crawford v. Crestar Foods*, 2000 WL 377349 at * 2 (6th Cir. April 6, 2000). To do so would require the courts "to explore exhaustively all potential claims of a *pro se* plaintiff . . . [and] would transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Id.* at 1278. Moreover, a plaintiff's failure to identify a particular legal theory in his Complaint places an unfair burden on defendants to speculate about the potential claims that a plaintiff may be raising against them and the defenses they might assert in response to each of these possible causes of action. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

In the instant case, Plaintiff does not identify a legal theory underlying this claim, nor is one apparent to me from the face of the Complaint. Moreover, Plaintiff fails to set forth any factual allegations suggesting Defendants Grey, Heinl, Lange, and/or Strohl engaged in any active

unconstitutional conduct or implicitly authorized, approved, or knowingly acquiesced in Plaintiff's medical charges while he was incarcerated at MCADC.  Even liberally construed, the Complaint fails to plead federal constitutional claims against these Defendants relating to Plaintiff's assertion he was overcharged for unidentified medications and doctor visits. Accordingly, I find his claim must be summarily dismissed under § 1915(e).

## IV.  Conclusion

Accordingly, Plaintiff's claims against Defendants Mercer County Commissioners and MCADC are dismissed pursuant to 28 U.S.C. § 1915(e).  Plaintiff's claims regarding excessive force and deliberate indifference to his serious dental needs are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e).  Plaintiff's remaining claims are dismissed with prejudice pursuant to 28 U.S.C. §1915(e).  The Court certifies pursuant to 28 U.S.C. §1915(a)(3) that an appeal from this decision could not be taken in good faith.[7]

So Ordered.


s/Jeffrey J. Helmick
_____
UNITED STATES DISTRICT JUDGE

---

[7]    28 U.S.C. § 1915(a)(3) provides that "[a]n appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith."